# EXHIBIT C



**Education and Leadership for a Lifetime**

2100 Freeway Boulevard, Brooklyn Center, Minnesota 55430-1735   |   (763) 560-2262, FAX (763) 569-0499   |   www.mshsl.org

February 14, 2025

John Keller, Chief Deputy Attorney General
The Minnesota Attorney General's Office
445 Minnesota Street, Suite 600
St. Paul, MN 55101

Dear Chief Deputy Attorney General Keller,

As you know the Minnesota State High School League and its member schools have been placed in a legal quandary as a result of the February 5th Presidential Executive Order *Keeping Men Out of Women's Sports* regarding student athletes because (i) Minn. Stat. § 363A.13 provides that it "is an unfair discriminatory practice to discriminate in any manner in the full utilization of or benefit from any educational institution, or the services rendered thereby to any person because of . . . gender identity" and (ii) the Minnesota Court of Appeals has held that the MHRA's education provision "explicitly prohibits discriminating in any manner on the basis of sexual orientation, which includes segregating or separating transgender students" and that denying use of a locker room that is available to students of the gender with which the student identifies states a claim upon which relief can be granted of an equal-protection violation under article I, section 2 of the Minnesota Constitution." *N.H. v. Anoka-Hennepin Sch. Dist. No. 11*, 950 N.W.2d 553 (Minn. App. 2020).

To further complicate this issue, there is an exception in § 363A.23, subd. 2, which states it is not an unfair discriminatory practice for an educational institution to restrict membership on an athletic team to participants of one sex if this separation or restriction is to address past inequities in access to athletic programs. However, the Eighth Circuit determined in 2019 that the overall underrepresentation of girls in high school athletics did not continue to exist in Minnesota. *D.M. v. Minnesota State High Sch. League*, 917 F.3d 994, 1002 (8th Cir. 2019). Accordingly, "the League cannot prohibit boys from participating on girls' teams unless it has some other "exceedingly persuasive" justification for doing so. *Id.*

We appreciate the willingness of the Attorney General's office to provide counsel and direction in this matter. At the outset, please note the Minnesota State High School League's authority to regulate interscholastic activities is based on Minn. Stat. §128C.01 subd.1 which authorizes school boards to "delegate control of extracurricular activities" to MSHSL. School boards annually complete this delegation.  Currently 624 member schools belong to the League as a result of the delegation.

School districts throughout Minnesota have questions regarding the Executive Order. We believe we fall within the parameters of Minn. Stat. §8.07 for purposes of requesting a formal opinion from the Attorney General. We basically "stand in the shoes" of school districts in this matter, and the questions we have are of "public importance . . .relating to public schools" as that phrase is used in Minn. Stat. §8.07. For these reasons we are joined by the Minnesota Association of School Administrators and the Minnesota Association of Secondary School Principals in requesting an opinion pursuant to Minn. Stat. Ch. 8.

The questions we have are as follows:

Question #1: Does the Executive Order of February 5, 2025, *Keeping Men Out of Women's Sports* (hereinafter referred to as the Executive Order) supersede/preempt the Minnesota Human Rights Act, Minn. Stat. §363A.01, et. seq. which prohibits discrimination in education based on gender identity particularly as this relates to participation in extracurricular activities offered by the Minnesota State High School League and its member schools?

Question #2: Does the Executive Order supersede/preempt the equal protection clause contained in Article 1, Section 2 of the Minnesota Constitution particularly as this relates to participation in extracurricular activities offered by the Minnesota State High School League and its member schools?

Question #3: If a school district complies with the Executive Order and prohibits a student from participation in extracurricular activities consistent with the student's gender identity, does this subject the district to claims for violations of the Minnesota Human Rights Act?

Question #4: If the League complies with the Executive Order and prohibits a student from participation in extracurricular activities consistent with the student's gender identity, does this subject the League to claims for violations of the Minnesota Human Rights Act?

We appreciate your assistance in this matter.

Sincerely,

Erich Martens, Executive Director

Cc:   Deb Henton, Executive Director, Minnesota Association of School Administrators (MASA)
      Bob Driver, Executive Director, Minnesota Association of Secondary School Principals (MASSP)