# EXHIBIT D

> **Minnesota State High School League:** Executive Order 14201 does not preempt Minnesota law. Prohibiting students from participating in extracurricular activities consistent with their gender identity would violate the Minnesota Human Rights Act.
>
> 1035



February 20, 2025

Erich Martens
Executive Director
Minnesota State High School League
2100 Freeway Boulevard
Brooklyn Center, Minnesota 55430

Re:   Request for Advisory Opinion Pursuant to Minn. Stat. § 8.07

Dear Mr. Martens:

Thank you for your letter dated February 14, 2025, requesting an opinion from this Office on the legal effect of the Executive Order 14201 and whether compliance with the Executive Order would violate the Minnesota Human Rights Act.

### BACKGROUND

The facts as you present them are as follows. The Minnesota State High School League ("MSHSL") is a nonprofit voluntary association which neither solicits nor receives state or federal funding. Its authority to regulate interscholastic activities is based on Minnesota Statutes section 128C.01, subd. 1, which authorizes school boards to "delegate control of extracurricular activities" to the MSHSL. Currently 624 member schools have delegated this control to MSHSL. These member schools do receive funding from state and federal sources.

The MSHSL, together with the Minnesota Association of School Administrators and the Minnesota Association of Secondary School Principals, requests guidance on Executive Order 14201 entitled "Keeping Men Out Of Women's Sports" (hereinafter Executive Order), which President Trump signed on February 5, 2025.

The Executive Order directs the Secretary of Education to "prioritize Title IX enforcement actions against educational institutions (including athletic associations composed of or governed by such institutions) that deny female students an equal opportunity to participate in sports and athletic events by requiring them, in the women's category, to compete with or against or to appear unclothed before males," (*id.* at § 3(a)(iii)) and further directs that "[a]ll executive departments

Erich Martens, Executive Director
February 20, 2025
Page 2.

and agencies (agencies) shall review grants to educational programs and, where appropriate, rescind funding to programs that fail to comply with the policy established in this order." *Id.* § 3(b).

## QUESTIONS PRESENTED

The questions you raise are the following:

Question 1: Does the Executive Order supersede/preempt the Minnesota Human Rights Act, Minn. Stat. 363A.01, et. seq. ("MHRA") which prohibits discrimination in education based on gender identity particularly as it relates to participation in extracurricular activities offered by the League and its member schools?

Question 2: Does the Executive Order supersede/preempt the equal protection clause contained in Article 1, Section 2 of the Minnesota Constitution particularly as it relates to participation in extracurricular activities offered by the League and its member schools?

Question 3: If a school district complies with the Executive Order and prohibits a student from participation in extracurricular activities consistent with the student's gender identity, does this subject the district to claims for violations of the MHRA?

Question 4: If the League complies with the Executive Order and prohibits a student from participation in extracurricular activities consistent with the student's gender identity, does this subject the League to claims for violations of the MHRA?

We interpret your questions as follows: (1) Whether the Executive Order preempts Minnesota laws, including the MHRA and the equal protection clause in Article 1, Section 2 of the Minnesota Constitution, which prohibit discrimination in education based on gender identity particularly as it relates to participation in extracurricular activities offered by the MSHSL and its member schools, and (2) Whether compliance with the Executive Order by prohibiting students from participation in extracurricular activities consistent with their gender identity violates the MHRA.

## SUMMARY OF CONCLUSION

The Executive Order does not have the force of law and therefore does not preempt any aspect of Minnesota law. Complying with the Executive Order and prohibiting students from participation in extracurricular activities consistent with their gender identity would violate the MHRA.

## ANALYSIS

I. **THE EXECUTIVE ORDER DOES NOT SUPERSEDE MINNESOTA LAW**

Erich Martens, Executive Director
February 20, 2025
Page 3.

Where a state law and federal law conflict, the federal law can preempt the state law if it is impossible to comply with both state and federal law, and the state law is an obstacle to the accomplishment of the full purpose of Congress in enacting the relevant federal law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000). In order to preempt state law, however, a federal action, whether taken by Congress, an executive branch agency, or by the President himself, must have the force and effect of law. *Wyeth v. Levine*, 555 U.S. 555, 576 (2009) ("[A]n agency regulation with the force of law can pre-empt conflicting state requirements."). An executive order will only have the force and effect of laws "when issued pursuant to a statutory mandate or delegation of authority from Congress." *Indep. Meat Packers Ass'n v. Butz*, 526 F.2d 228, 234 (8th Cir. 1975); *cf. Crosby*, 530 U.S. 374-75 (holding that Executive Order made pursuant to an "express investiture of the President with statutory authority to act for the United States" had force and effect of law such that it preempted a conflicting state statute).

The Executive Order at issue in your letter was not issued pursuant to a statutory mandate or express delegation of authority from Congress. Although the Executive Order references Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq.*, Title IX does not authorize the President to issue directives with the force of law or to unilaterally rescind all federal funds from all educational programs that do not comply with presidential policy preferences. *Contra Crosby*, 530 U.S. 374 (finding authorization to act with the force of law where Congress authorized the President to take certain actions if he made specific findings). In fact, Congress made it clear that the President could not, on his own, rescind federal funding from an educational program, by including a statutory provision that mandates a process, controlled by the agencies empowered to provide federal funds to educational entities, for the termination of any such funding. *See* 20 U.S.C. § 1682 (requiring "an express finding on the record, after opportunity for hearing, of a failure to comply" with a properly-issued regulation implementing Title IX's prohibition against sex discrimination in educational programs).

Because the President does not have the authority to unilaterally rescind funding from educational programs, the Executive Order does not have the force of law and cannot supersede Minnesota state law.

II. **MSHSL AND SCHOOL DISTRICTS WOULD VIOLATE THE MHRA IF THEY PROHIBIT STUDENTS FROM PARTICIPATING IN EXTRACURRICULAR ACTIVITIES CONSISTENT WITH STUDENTS' GENDER IDENTITY.**

The MHRA declares that the full utilization of or benefit from any educational institution without discrimination is a civil right. Minn. Stat. § 363A.02, subds. 1(5) & (2). The Minnesota Legislature recognized that discrimination based on a person's membership in a protected class threatens the rights and privileges for all and "menaces the institutions and foundations of democracy." *Id.* at subd. 1(b). The MHRA is liberally construed to accomplish its remedial purpose of securing freedom from discrimination for persons in Minnesota. Minn. Stat. § 363A.04.

The plain language of the MHRA prohibits schools from discriminating against students based on their gender identity. In its section specific to educational institutions, the statute provides that "[i]t is an unfair discriminatory practice to discriminate in any manner in the full utilization of

Erich Martens, Executive Director
February 20, 2025
Page 4.

or benefit from any educational institution, or the services rendered thereby to any person because of . . . gender identity[.]" Minn. Stat. § 363A.13, subd. 1. The MHRA specifically defines "gender identity" to mean "a person's inherent sense of being a man, woman, both, or neither. A person's gender identity may or may not correspond to their assigned sex at birth or to their primary or secondary sex characteristics." Minn. Stat. § 363A.03, subd. 50. To discriminate includes to "segregate or separate." Minn. Stat. § 363A.03, subd. 13.

An educational institution violates the MHRA by discriminating in any manner in the services or benefits it offers a student because of the student's gender identity. This includes prohibiting transgender student athletes from participating in extracurricular activities, as such a practice inherently separates and segregates transgender student athletes from other student athletes based solely on their gender identity. Excluding transgender girl athletes from participating in girls' extracurricular activities, as the Executive Order directs, denies those students the full utilization and benefit of educational institutions in violation of the MHRA. *See, e.g., N.H. v. Anoka-Hennepin Sch. Dist. No. 11*, 950 N.W.2d 553, 562-65 (Minn. Ct. App. 2020) (holding that school must permit transgender student to use locker room that aligns with the student's gender identity under the MHRA).

Therefore, based on the plain language of the statute, educational institutions and the MSHSL would violate the MHRA by prohibiting transgender athletes from participating in extracurricular activities according to their gender identity.

Thank you again for your inquiry, and we hope this opinion is helpful to you.

Sincerely,

*[signature: Keith Ellison]*

KEITH ELLISON
Attorney General

|#6010019-v2