# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

STATE OF MINNESOTA, *by and through its Attorney General Keith Ellison*,

        Plaintiff,

        v.

DONALD J. TRUMP, *in his official capacity as President of the United States*; UNITED STATES DEPARTMENT OF JUSTICE; PAMELA BONDI, *in her official capacity as Attorney General of the United States*; UNITED STATES DEPARTMENT OF EDUCATION; LINDA MCMAHON, *in her official capacity as Secretary of Education*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR., *in his official capacity as Secretary of Health and Human Services*

        Defendants.

Case No.: 25-cv-01608 (ECT/DLM)

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................3

BACKGROUND ...................................................................................................................3

ARGUMENT .........................................................................................................................4

I.    THE ENFORCEMENT ACTION CONFIRMS THAT MINNESOTA HAS STANDING AND ITS
      CLAIMS ARE RIPE. ......................................................................................................4

      A.    Minnesota Alleges Imminent Injury. ..................................................................4

      B.    This Case Is Ripe For Review. ...........................................................................6

II.   THE ENFORCEMENT ACTION CONFIRMS THAT MINNESOTA HAS PLAUSIBLY
      ALLEGED FINAL AGENCY ACTION. ..............................................................................8

CONCLUSION.....................................................................................................................11

## INTRODUCTION

For nearly a year, Defendants have repeatedly told this Court that Minnesota's lawsuit was "severely premature" because Defendants had just started Title IX's multi-step administrative process to cut funding. ECF 20 at 1; ECF 62 at 3. That was false. Since Minnesota sued in April 2025, Defendants have repeatedly concluded that Minnesota is violating Title IX. They referred the purported violations to the U.S. Department of Justice (DOJ) for enforcement. And then last week, they sued the Minnesota Department of Education (MDE) and the Minnesota State High School League (MSHSL) for Title IX violations, seeking injunctive relief and damages. Defendants' enforcement action proves that Minnesota faces imminent injury, the case is ready for review, and Minnesota easily meets the test for final agency action.

## BACKGROUND

From the moment President Trump was sworn into office, Defendants have repeatedly threatened to cut funding in the state if Minnesota did not adopt the President's policy preferences to categorically exclude transgender youth from sports teams and facilities that align with their gender identity. Am. Compl. ¶¶ 2-4, 54-78. In April 2025, Minnesota sued when DOJ threatened to cut funding for alleged Title IX violations (the "DOJ Letters"). *Id.* ¶¶ 59-67. The DOJ claimed that Minnesota had "jumped the gun" by suing. ECF 20 at 1. But while the DOJ's first motion to dismiss was pending, Defendants U.S. Department of Education (DOE) and U.S. Department of Health and Human Services (HHS) issued a Letter of Findings (the "Findings"), concluding that Minnesota's inclusive policies violate Title IX. Am. Compl. ¶¶ 73-76; Ex. J.

3

In light of those developments, Minnesota (over the DOJ's opposition) amended its complaint to add DOE and HHS as defendants. Defendants then moved to dismiss yet again, maintaining that Minnesota's suit was still premature. While the second motion was pending, DOE and HHS referred the Findings to DOJ, and on March 30, 2026, DOJ filed an enforcement action against MDE and MSHSL (the "Enforcement Action"). The Enforcement Action alleges that Minnesota's policies violate Title IX, and it seeks sweeping injunctive relief and damages. Compl., *United States v. MDE*, No. 26-cv-2078 (D. Minn. Mar. 30, 2026).

## ARGUMENT

I.    **THE ENFORCEMENT ACTION CONFIRMS THAT MINNESOTA HAS STANDING AND ITS CLAIMS ARE RIPE.**

A.    **Minnesota Alleges Imminent Injury.**

Defendants' main objection to standing has been that Plaintiff's asserted injuries are too speculative. *See, e.g.*, ECF 68 at 9-10. But Defendants have long undercut this argument with their actions, and the recent Enforcement Action is fatal to them.[1]

Courts routinely find standing when plaintiffs are forced to choose between defying federal law and risking financial penalties or changing their laws and policies. *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 591 (6th Cir. 2024) (finding standing where "the States are

---

[1] In their reply, Defendants argue that Minnesota "cannot amend its complaint with factual allegations in its Opposition" motion. ECF 68 at 10. Minnesota has not sought to amend its complaint. Minnesota has properly asked the Court to take judicial notice of undisputed facts in the public record: DOE and HHS referred the Findings to DOJ and DOJ filed the Enforcement Action. *See, e.g.*, *Hansen v. Westly*, No. 24-CV-2653 (ECT/JFD), 2024 WL 4851300, at *1 (D. Minn. Nov. 21, 2024).

trapped between choosing to enforce state laws or receiving federal funds"); *Texas v. Cardona*, 743 F. Supp. 824, 848-49 (N.D. Tex. 2024) (finding standing where the state was presented with "a Hobson's choice" of standing by its laws or forfeiting federal funding); *cf. Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602-06 (8th Cir. 2022) (finding standing where plaintiffs' conduct was "arguably proscribed" by the ACA's anti-discrimination provision and plaintiffs cited recent enforcement activity).

Here, the Enforcement Action confirms that Minnesota faces that impossible choice. It also shows why Minnesota's affirmative suit must proceed.  While the Enforcement Action targets just MDE and MSHSL, Minnesota's affirmative suit seeks statewide relief. Defendants' recent actions targeting MDE and MSHSL show that they will continue to target other state instrumentalities and political subdivisions if Minnesota does not yield to their pressure campaign. *See Religious Sisters*, 55 F.4th at 606.  For example, the Findings conclude that various Minnesota school districts are also violating Title IX and receive over $38 million in federal funding from DOE.  Am. Compl., Ex. J at 3 & n.3, 38-39. Defendant DOJ has threatened funding to St. Paul Public Schools, Metropolitan State University, and the University of Minnesota if Attorney General Ellison does not change his opinion that prohibiting students from participating in extracurricular activities that align with their gender identity would violate state law. Am. Compl. ¶¶ 63-67.  And more broadly, the President's Sports Ban Executive Order has directed federal agencies to rescind funding to programs that do not categorically exclude transgender girls from participating in girls' sports. *Id.* ¶¶ 50-53.

5

Given the lengths to which Defendants have already gone to implement the President's Executive Order in the State and across the country, the Court should take Defendants at their word. *Tennessee*, 104 F.4th at 588-89 (finding the fear of enforcement was "not unfounded" because "it comes directly from the text of [DOE's] Documents"). Because Defendants have repeatedly asserted that the State's inclusive policies violate Title IX, Defendants have taken action to enforce Title IX against some Minnesota entities, and Defendants have threatened enforcement against other Minnesota entities, Minnesota has standing to seek affirmative relief in its affirmative suit against the Defendants. *See, e.g.*, *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 485-86 (8th Cir. 2006).

**B.      This Case Is Ripe For Review.**

Defendants have also argued that the case is not ripe because the alleged injuries are too speculative.   ECF 68 at 9-10.   Because Defendants ground their argument in Minnesota's alleged speculation, their standing and ripeness arguments "essentially 'boil down to the same question.'" *Religious Sisters*, 55 F.4th at 608.  And as with standing, the Enforcement Action confirms that Minnesota's claims are necessarily ripe for review.

Ripeness turns on fitness and hardship. *Pub. Water Supply Dist. No. 10 of Cass Cnty. v. City of Peculiar*, 345 F.3d 570, 572-73 (8th Cir. 2003).  First, the Enforcement Action shows that the case is fit for review now because there is a concrete dispute between Minnesota and Defendants about the meaning of Title IX.  Like the DOJ Letters and Findings, the Enforcement Action asserts that Minnesota's inclusive policies violate

6

Title IX. Compl. ¶¶ 78-81, 103-04, 140-41, *United States v. MDE*, No. 26-cv-2078 (D. Minn. Mar. 30, 2026).

Second, withholding judicial review in Minnesota's affirmative suit would impose hardship on the State, and it is not sufficient for Minnesota simply to defend against the Enforcement Action. Courts consistently find sufficient hardship warranting prompt judicial review where plaintiffs must choose between compliance with allegedly unlawful agency action or noncompliance at the risk of substantial penalties. *See, e.g.*, *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 152-54 (1967); *Texas*, 743 F. Supp. 3d at 862. In the face of Defendants' repeated threats, Minnesota need not risk significant penalties while waiting for Defendants to "drop [another] hammer" to have its day in court. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016) (quoting *Sackett v. EPA*, 566 U.S. 120, 127 (2012)); *CSI Aviation Servs. v. U.S. Dep't of Transp.*, 637 F.3d 408, 410, 413-14 (D.C. Cir. 2011) (finding hardship where plaintiff faced the "troubling question of whether it was willing to risk serious penalties in order to obtain such a hearing at all").

Moreover, courts have rejected arguments that plaintiffs face no hardship simply because they would have the opportunity to present defenses in a future enforcement proceeding. *See, e.g.*, *Texas*, 743 F. Supp. 3d at 862; *Tennessee v. U.S. Dep't of Educ.*, 615 F. Supp. 3d 807, 827-28 (E.D. Tenn. 2022), *aff'd sub nom. State of Tennessee v. Dep't of Educ.*, 104 F.4th 577 (6th Cir. 2024). And there are important differences between Minnesota's affirmative suit and the Enforcement Action. For example, Minnesota's direct constitutional claims challenge the Executive Orders and their implementation. Those

7

Executive Orders are not necessarily at issue in the Enforcement Action, which focuses on MDE's and MSHSL's noncompliance with Title IX. Additionally, as noted above, Minnesota's affirmative suit seeks statewide relief, asking the Court to enjoin Defendants from enforcing or implementing the Executive Orders, DOJ Letters, and Findings against all of Minnesota's state instrumentalities and political subdivisions. Thus, the affirmative lawsuit seeks broader, statewide relief than MDE and MSHSL could seek in the Enforcement Action. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025).

## II. THE ENFORCEMENT ACTION CONFIRMS THAT MINNESOTA HAS PLAUSIBLY ALLEGED FINAL AGENCY ACTION.

In its Opposition, Minnesota explained that the Findings issued by DOE and HHS have all of the hallmarks of final agency action. ECF 66 at 22-25. The Enforcement Action proves that the Findings were the "consummation" of the agencies' decision-making processes and that the Findings determined Minnesota's "rights or obligations" under Title IX—a determination from which legal consequences flow. *See Sackett*, 566 U.S. at 126-27 (describing hallmarks of APA finality).

The Enforcement Action reinforces the conclusion that the Findings marked the consummation of Defendants' decision-making process. The Findings set forth a novel and definitive conclusion that Minnesota's policy of allowing students to play on sports teams and access facilities that align with their gender identity violates Title IX. Am. Compl. ¶ 74.[2] Contrary to Defendants' assertions, ECF 68 at 4, this definitive legal

---

[2] The Findings were referred to DOJ and DOJ reiterated this same definitive legal position in the Enforcement Action. Compl. ¶¶ 1, 76-141, *United States v. MDE*, No. 26-cv-2078 (D. Minn. Mar. 30, 2026).

position is not necessarily subject to further agency review. DOE and HHS referred the Findings for enforcement rather than follow the multi-step administrative process within the agencies themselves. *See, e.g., Sackett*, 566 U.S. at 127 (finding the agency's order marked the consummation of the agency's decisionmaking process where there was "no entitlement to further [a]gency review"); *CSI Aviation*, 637 F.3d at 412 (finding agency's definitive statement that "gave no indication that it was subject to further agency consideration or possible modification" to be final action (quoting *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436-37 (D.C. Cir. 1986)).

The Enforcement Action also reinforces that the Findings meet the second prong of the final agency action test: they determine Minnesota's rights or obligations, and legal consequences flow them. *Bennett v. Spear*, 520 U.S. 154, 178 (1997). In the Findings, Defendants bind themselves to the position that Title IX prohibits Minnesota from enforcing its decadelong policy of allowing students to play on sports teams and access facilities that align with their gender identity. Am. Compl. ¶ 74. Defendants' change in position on the meaning of Title IX imposes new obligations on Minnesota. *Cf. Texas*, 743 F. Supp. 3d at 846 (Biden-era federal guidance documents interpreting Title IX to require inclusion of transgender athletes "impose[d] new duties by 'chang[ing] the text' of the statute they 'profess to interpret'" (quoting *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 407 (D.C. Cir. 2020)).

The Enforcement Action illustrates the legal consequences that can flow from Defendants' new Title IX interpretation. The Enforcement Action alleges that MDE breached certain contractual assurances related to Title IX and seeks to claw back federal

funds.   Compl. ¶¶ 204-05, 221-24, *United States v. MDE,* No. 26-cv-2078 (D. Minn. Mar. 30, 2026).  Minnesota's other state instrumentalities and political subdivisions could face similar financial penalties in a future enforcement action if they refuse to voluntarily comply.  *See Tennessee,* 104 F.4th at 599 ("The Documents tell the States how to avoid liability, thereby creating legal consequences."); *Rhea Lana v. Dep't of Labor*, 824 F.3d 1023, 1032 (D.C. Cir. 2016) (finding that legal consequences flowed because warning letter made Rhea Lana eligible for civil penalties in future enforcement action).

Defendants obviously knew that the Enforcement Action was imminent and preemptively addressed it in their reply brief (albeit without disclosing to the Court or Minnesota's counsel that a suit would be filed).  They anticipatorily argued that an enforcement action, by itself, neither imposes new obligations nor necessarily means that legal consequences will flow because a court still needs to determine if Minnesota is violating Title IX.  ECF 68 at 5.  But Minnesota is not alleging that the Enforcement Action itself is final agency action.  And the fact that DOJ may not ultimately prevail in the current Enforcement Action—or any future enforcement action—does not "rob" the Findings of their "legal consequences."  *Rhea Lana*, 824 F.3d at 1032.

More fundamentally, the APA adopts a "pragmatic approach" to finality given the APA's "presumption of judicial review."  *Cf. Hawkes*, 578 U.S. at 600.  For nearly a year, Minnesota has told this Court that judicial review was warranted because Defendants had determined that Minnesota is violating Title IX and threatened significant financial penalties through funding cuts and enforcement actions.  *See CSI Aviation*, 637 F.3d at 412 (finding final agency action where the company was put to "the painful choice between

costly compliance and the risk of prosecution at an uncertain point in the future").

Minnesota was right.  Minnesota's claims should proceed.

**CONCLUSION**

Defendants' motion to dismiss should be denied.

Dated: April 7, 2026                    Respectfully submitted,

                                        KEITH ELLISON
                                        Attorney General
                                        State of Minnesota

                                        <u>**s/ Katherine Bies**</u>
                                        LIZ KRAMER (#0325089)
                                        Solicitor General
                                        PETER J. FARRELL (#0393071)
                                        Deputy Solicitor General
                                        MAURA ALLEN (#0504790)
                                        KATHERINE BIES (#0401675)
                                        Assistant Attorneys General

                                        445 Minnesota Street, Suite 600
                                        St. Paul, Minnesota 55101-2125
                                        (651) 757-1010 (Voice)
                                        (651) 282-5832 (Fax)
                                        liz.kramer@ag.state.mn.us
                                        peter.farrell@ag.state.mn.us
                                        maura.allen@ag.state.mn.us
                                        katherinebies@ag.state.mn.us

                                        *Attorneys for Plaintiff State of Minnesota*

|#6334056-v1