**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **STATE OF MINNESOTA,** *by and through its Attorney General Keith Ellison* | Court File No. 25-CV-1608 (ECT/DLM) |
| Plaintiff, | |
| v. | **DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| **DONALD J. TRUMP,** *in his official capacity as President of the United States:* **UNITED STATES DEPARTMENT OF JUSTICE; TODD BLANCHE,** *in his official capacity as Acting Attorney General of the United States*; **UNITED STATES DEPARTMENT OF EDUCATION; LINDA MCMAHON**, *in her official capacity as Secretary of Education*; **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR.,** *in his official capacity as Secretary of Health and Human Services* | |
| Defendants. | |

This Court should be dizzy from Plaintiff constantly changing its allegation of its purported future injury. The First Amended Complaint, ECF No. 53, alleged injury from future funding cuts, Plaintiff then improperly pivoted away from the Amended Complaint to injury from potential judicial enforcement in its Opposition, ECF No. 66, and now Plaintiff seemingly switches again to future funding cuts in its Supplemental Brief, ECF No. 75. Even if this flip-flopping was somehow proper, Plaintiff's shifting shows there's

nothing "certainly impending" about its speculative possible future injury.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Plaintiff's latest iteration of its injury is a speculative injury from potential future funding cuts.  Plaintiff's Supplemental Brief claims that the United States' recently filed Title IX, 20 U.S.C. § 1681, lawsuit helps Plaintiff establish standing, ripeness, and final agency action.  But that lawsuit makes the potential for funding cuts in the future even less likely and thus makes Plaintiff's meritless arguments regarding standing, ripeness, and final agency action even weaker than before.

### A.  Plaintiff Still Lacks Standing and a Ripe Claim.

Plaintiff lacks standing and its claims lack ripeness because Title IX's multi-step administrative process makes Plaintiff's alleged injury from possible future funding cuts too speculative and nowhere close to imminent.  The agency Defendants have just started this lengthy multi-step process.  And even according to Plaintiff, the Title IX lawsuit makes the completion of this administrative process and funding cuts even less likely.

Plaintiff's First Amended Complaint alleged injury from potential future funding cuts.  *See* 1st Amend. Compl. ¶ 9; *see also* U.S. Br. Mot. to Dismiss at 20-21, ECF No. 62.  Seemingly because of a referral to the Department of Justice ("DOJ") for judicial enforcement after the Amended Complaint, Plaintiff's Opposition to the Motion to Dismiss shifted away from the Amended Complaint to an injury from potential imminent judicial enforcement.  *See, e.g.*, Pl. Opp'n at 23-24.  This is improper because a Plaintiff cannot amend its complaint with factual allegations in its Opposition. *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989), and regardless standing and

ripeness are assessed at the time a complaint is filed, *L.H. v. Indep. Sch. Dist.*, 111 F.4th 886, 892 (8th Cir. 2024); *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 814 (8th Cir. 2006).  *See* U.S. Reply Br. Mot. to Dismiss at 10, ECF No. 68.

Plaintiff's Supplemental Brief appears to have shifted back to an injury from potential future funding cuts.  *E.g.*, Pl. Supp. Br. at 3 ("Defendants have repeatedly threatened to cut funding") ("Minnesota sued when DOJ threatened to cut funding for alleged Title IX violations"), 4 ("risking financial penalties"), 5 ("Defendant DOJ has threatened funding to . . .) ("Executive Order has directed federal agencies to rescind funding").

To terminate funding, the Defendant Departments of Education ("DOE"), Health and Human Services ("HHS"), and DOJ would all need to go through a multi-step administrative process that includes a full hearing under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.*  *See* 20 U.S.C. 1682; *e.g.*, 34 C.F.R. §§ 100.9-100.11 (DOE funding termination regulations).  This process requires the agency to notify a funding recipient of an initial finding of "a failure to comply," and a determination that "compliance cannot be secured by voluntary means."  20 U.S.C. 1682.  To terminate funding, the multi-step administrative process also requires a subsequent APA hearing to make an "express finding on the record . . . of a failure to comply."  *Id.*  And even after that administrative finding following an APA hearing, the agency must file a written report with Congress explaining the termination grounds and wait 30 days to terminate funding.  *Id.*

At the time of the filing of the Amended Complaint—when standing and ripeness should be determined—the DOJ had not even made initial findings and the DOE and HHS had made only the initial finding of a failure to comply. Since the filing of the Amended Complaint the DOJ has still not issued any agency findings. The DOE and HHS have determined that voluntary compliance could not be secured and referred the matter to the DOJ to seek judicial enforcement through "other means" than funding termination. *See* 20 U.S.C. § 1682. The United States recently sought that judicial enforcement by filing a complaint for Title IX violations in this Court. *See* Compl. *United States v. Minnesota Dep't of Education*, No. 26cv02078, (D. Minn. March 30, 2026), ECF No. 1.

To terminate funding, however, the Defendant agencies would all still need to go through the rest of the lengthy administrative process that includes a full APA hearing and waiting 30 days after a report to Congress. And Plaintiff admits that the United States' recent Title IX lawsuit makes pursuing administrative funding cuts even less likely, Pl. Supp. Br. at 8-9 (claiming the DOE/HHS Letter "is not necessarily subject to further agency review [because] DOE and HHS referred the Findings for enforcement rather than follow the multi-step administrative process within the agencies themselves"); *see also* Pl. Opp'n at 12 (explaining that an agency "can choose whether to follow the administrative hearing process to terminate funds or to simply refer the action to DOJ" and "defendants have chosen the second [referral] path in Minnesota"). Plaintiff's Supplemental Brief (at 8) points to other state entities such as "school districts" who are not defendants in the United States' Title IX suit. But the agency Defendants would still

4

need to go through the full multi-step administrative process for those state entities to sustain any injury from funding cuts.

This dooms Plaintiff's ripeness and standing arguments. The ripeness doctrine serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Sch. of the Ozarks v. Biden*, 41 F.4th 992, 997-98 (8th Cir. 2022) (citation omitted).

The ripeness analysis concerns two factors: fitness and hardship. *Texas v. United States*, 523 U.S. 296, 301 (1998); *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 993 (8th Cir. 2016). A claim lacks "fitness" when it depends on "contingent future events that may not occur as anticipated." *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas*, 523 U.S. at 300). As above, Plaintiff's constantly shifting assertion of what future injury it claims shows that its speculative injury is "contingent [on] future events that may not occur as anticipated." *Id.* For similar reasons, Plaintiff's claims also fail the ripeness "hardship" requirement, which requires that Plaintiff be "immediately in danger" and that a threatened injury be "certainly impending." *Hughes*, 840 F.3d at 993; *Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 958-59 (8th Cir. 2001). Here, given Title IX's multi-step process, and that the United States' Title IX lawsuit makes administrative funding cuts even less likely, Plaintiff is not "immediately in danger" and threatened injury is not close to "certainly impending."

For similar reasons, Plaintiff also fails to establish the "closely related" requirement of constitutional "standing." *Sch. of the Ozarks*, 41 F.4th at 997. Standing requires, among other things, an "actual or imminent" injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). Like ripeness, standing's imminency prerequisite requires that a "threatened injury must be *certainly impending*" and allegations "of *possible* future injury" are not sufficiently imminent. *Clapper*, 568 U.S. at 409 (citation omitted). The multi-step administrative process and Title IX lawsuit make possible future funding cuts too "conjectural" or "hypothetical" and far from "certainly impending." *Lujan*, 504 U.S. at 560-61; *Clapper*, 568 U.S. at 409.

This Court should accordingly find that, even after the United States' Title IX suit, Plaintiff still lacks standing and a ripe claim.

### B. There's Still No Final Agency Action.

Plaintiff's Supplemental Brief (at 8-9) focuses on the initial findings Letter by DOE and HHS, again urging that these initial findings are final agency action under the APA, 5 U.S.C. § 704.[1] The filed Title IX lawsuit does not alter or make these initial findings any closer to final. Plaintiff's Supplemental Brief (at 10) even specifically concedes that the lawsuit itself (and presumably by omission the referral to potentially

---

[1] Plaintiff's Supplemental Brief focuses on the HHS/DOE Letter but sometimes (*e.g.*, at 8-9) seemingly refers to all "Defendants" as being responsible. That DOE/HHS Letter, however, obviously cannot be "agency action" by the other Defendants.

bring the suit) is not "final agency action."  Indeed, Plaintiff concedes that the lawsuit means these initial findings may never even eventually lead to final agency action.

As previously explained, Title IX's multi-step administrative process to terminate funding, which requires a subsequent full APA hearing, shows that the DOE/HHS Letter is not final agency action.  *See* 20 U.S.C. 1682; *e.g.*, 34 C.F.R. §§ 100.9-100.11.  The Letter is not the "consummation of the agency's decisionmaking process" but rather an initial "interlocutory" finding prior to that APA hearing.  *Bennett v. Spear*, 520 U.S. 154, 175 (1997).  And the result of any future APA hearing will be the DOE/HHS agencies' "determin[ation]" of "rights or obligations" and "legal consequences."  *Id.*

Plaintiff's repeated pleas to transform these the DOE/HHS interlocutory findings into final agency action ignores the subsequent APA hearing.  If the DOE/HHS Letter was final action with nothing left to decide, this APA hearing would be meaningless.  *See* U.S. Mot. to Dismiss Br. at 10-13, ECF No. 62.  Even after the United States filed its Title IX suit, Plaintiff's Supplemental Brief does not claim that DOE/HHS can now terminate funding without going through this multi-step administrative process.

Plaintiff claims (at 8-9) that the legal position in DOE/HHS Letter "is not necessarily subject to further agency review.  DOE and HHS referred the Findings for enforcement rather than follow the multi-step administrative process within the agencies themselves."  As above, this admits that Plaintiff's purported injury from future funding cuts is not "certainly impending" and thus directly contradicts Plaintiff's assertion that it has standing and its claims are ripe.  As for agency action, lack of review does not automatically turn an action into final action.  Rather, this means that final agency action

may never occur here because the findings remained "merely tentative," and the DOE/HHS agencies thus never "determined" "rights or obligations" or "legal consequences." *Bennett,* 520 U.S. at 175.[2]  This Court should accordingly find that there is still no final agency action here.

Overall, while Plaintiff's arguments on final agency action all fall flat, Plaintiff will get the opportunity to present and defend Minnesota's legal position on Title IX to this Court in the lawsuit the United States recently filed.

<b>CONCLUSION</b>

This Court should dismiss all claims against all Defendants.

Respectfully submitted,

 */s/ Matthew J. Donnelly*
MATTHEW J. DONNELLY
Attorney
Attorney ID Number 1186694CA
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530
Telephone: (202) 616-2788
Email: matthew.donnelly3@usdoj.gov

Dated:  April 10, 2026                    Counsel for the Defendants

---

[2]  Contrary to Plaintiff's suggestion, the DOE/HHS Letter, and the failure to voluntarily comply with it, does not subject its recipients (or anyone else) to increased penalties. *Cf. Sackett v. E.P.A.*, 566 U.S. 120, 126 (2012) (finding "compliance order" final because not complying with it subjected the violator to increased penalties in a subsequent enforcement action).